IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:26-cv-00442-SKC

LEOBARDO BALDERAS RIVAS,

    Petitioner,

v.

JUAN BALTAZAR, *et al.*,

    Respondents.

---

## ORDER

---

Petitioner Leobardo Balderas Rivas entered the United States without inspection in 2000 and has resided here continuously since then. Dkt. 1, ¶¶1, 39.[1] He is the father of three children, one of whom is currently enrolled in college and relies on Mr. Balderas Rivas for support. He owns his own home, has operated his own painting business since 2010, and has had no contact with the criminal legal system apart from traffic violations not involving alcohol. *Id.* at ¶14.

On November 25, 2025, while Mr. Balderas Rivas was stopped at a gas station on his way to work, immigration officers approached him and took him into

---

[1] Although it is of no consequence to the analysis, neither party has indicated where Plaintiff is originally from. But it is undisputed that he entered the U.S. without inspection.

1

custody. *Id*. On December 26, 2025, Petitioner moved for a bond hearing, which was held on January 13, 2026. The immigration judge found that Mr. Balderas Rivas is neither a flight risk nor a danger to the community and ordered that he be released upon payment of a $5,000 bond. *Id*. at ¶15. Petitioner was not permitted to post bond, however, because the Department of Homeland Security (DHS) invoked an automatic stay regulation so it could appeal the IJ's conclusions. *Id*. at ¶16. That regulation reads, in relevant part:

> **Automatic stay in certain cases.** In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR-43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board. The decision whether or not to file Form EOIR-43 is subject to the discretion of the Secretary.

8 C.F.R. § 1003.19(i)(2).[2] Mr. Balderas Rivas remains in custody to this day pursuant to this regulation.

Petitioner filed a Petition for Writ of Habeas Corpus on February 5, 2026,

---

[2] The automatic stay lapses after 90 days, absent a Board of Immigration Appeals (BIA) decision, 8 C.F.R. § 1003.6(c)(4), but the government can extend the detention by seeking a discretionary stay from the BIA, which automatically extends the stay for an additional 30 days while the BIA decides the request for discretionary stay. 8 C.F.R. § 1003.6(c)(5). If the BIA authorizes a noncitizens release, denies a motion for discretionary stay, or fails to act on such a motion before the automatic stay period expires, the noncitizen's release shall be automatically stayed for five business days. 8 C.F.R. § 1003.6(d). During that period, DHS can choose to refer the bond decision to the Attorney General, which extends the automatic stay for another 15 business days. 8 C.F.R. § 1003.6(d). The Attorney General can then extend the stay for the pendency of the custody proceedings. 8 C.F.R. § 1003.6(d).

seeking an order from this Court directing Respondents to affect his immediate release upon the payment of his $5,000 bond. Dkt. 1. He contends Respondents use of the automatic stay regulation, 8 C.F.R. § 1003.19(i)(2) is unconstitutional and violates his procedural and substantive due process rights. *Id.* at ¶18. And he contends Respondents' attempt to detain him pursuant to 8 U.S.C. § 1225(b)(2) is unlawful. *Id.* at ¶20.

This Court ordered Respondents[3] to respond to the Petition within three days of service. Dkt. 10. Specifically, the Court asked Respondents to address Magistrate Judge Susan B. Prose's analysis in *Merchan-Pacheo v. Noem*, No. 1:25-cv-03860-SBP, 2026 WL 88526, at *1 (D. Colo. Jan. 12, 2026) and show cause why it should not adopt her analysis in this case. In *Merchan-Pacheco*, Judge Prose was confronted with facts like those here, where an immigration judge found that the petitioner merited release upon posting a $25,000 bond. Although the petitioner's family paid the bond, DHS then invoked the automatic stay provision in 8 C.F.R. § 1003.19(i)(2) so it could appeal the immigration judge's findings to the BIA. Judge Prose conducted a thorough analysis pursuant to *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), and concluded that the automatic stay provision violated the petitioner's procedural due process rights.

---

[3] "Respondents" refers to Juan Baltazar, the Warden of the Denver Contract Detention Facility; Robert Gaudian, the Director of the Denver ICE Field Office; Kristi Noem, the Secretary of the United States Department of Homeland Security; Todd Lyons, the Acting Director of ICE; and Pamela Bondi, the United States Attorney General.

3

On February 9, 2026, in commendable candor to the court, Respondents acknowledged that the facts in this case are not materially different from those in *Merchan-Pacheco* but argue that the case was wrongly decided. Dkt. 13, pp.4-7. Respondents incorporate by reference the arguments they made in *Merchan-Pacheco* and contend the *Mathews v. Eldridge* analysis is not applicable in cases like this and even if it is, the factors do not support Mr. Balderas Rivas' due process claims. While thoughtfully articulated, the Court respectfully disagrees with Respondents and adopts in full Judge Prose's reasoning in *Merchan-Pach*eco and that of the growing number of district courts to address this issue.[4] *See Martinez v. Noem*, No. 5:25-CV-01007-JKP, 2025 WL 2598379, at *4, n.1 (W.D. Tex. Sept. 8, 2025) (collecting cases).[5]

## JURISDICTION

The Court has jurisdiction over this matter pursuant to Section 2241 of Title 28, which authorizes it to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "[T]he

---

[4] In her Order, Judge Prose addressed Respondents' contention that *Mathews v. Eldridge* does not apply in these cases. She engaged in a detailed analysis of each of Respondents' arguments and those cases upon which they relied and concluded *Mathews* is applicable. The Court agrees and adopts this analysis. *Merchan-Pacheco*, 2026 WL 88526, at **4-8.

[5] To be sure, the notion that this regulation likely violates the procedural due process rights of detainees is not new. Courts have been reaching this conclusion for over 20 years. *Martinez*, 2025 WL 2598379, at *4, n.1.

4

traditional function of the writ is to secure release from illegal custody." *Id*. Noncitizens may properly challenge the lawfulness of their detention through habeas proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

The Court has considered the Petition, the Response, the various attachments, and the governing law. Because Petitioner's challenge is fundamentally legal in nature, the Court declines to hold a hearing. *See* 28 U.S.C. § 2243.

## ANALYSIS

To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, (1976). Pursuant to *Mathews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

At the outset, there is no question but that Mr. Balderas Rivas has a significant interest at stake. Freedom from physical detention "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (directing courts, when assessing the first *Mathews* factor, to consider only the petitioner's interests at stake in ongoing detention without consideration of the respondents' justifications for the

5

detention). Despite not being accused of any crime, Petitioner is being held in a detention facility that "strongly resemble[s] penal confinement," *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 940 (D. Colo. 2025), is away from his family, and is unable to maintain his employment. Thus, the first *Matthews* factor supports Mr. Balderas Rivas' claim of a due process violation.

Turning to the second factor, Respondents begin by noting that this factor has also been referred to as the "concern for accuracy." Dkt. 13, p.9 (citing *City of Los Angeles v. David*, 538 U.S. 715, 718 (2003)). Then they argue that the automatic stay enhances accuracy because the IJ's custody determination is promptly reviewed before the noncitizen is released. *Id.* But this frames the concern for accuracy solely in the government's favor, and "the traditional due process concern with accuracy . . . is meant to protect the individual interest." *Benham v. Ledbetter*, 785 F.2d 1480, 1487 (11th Cir. 1986); *see also Speiser v. Randall*, 357 U.S. 513, 525–26 (1958) ("Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party the burden of producing a sufficiency of proof in the first instance. . . ."); *Mathews v. Eldridge*, 424 U.S. 319, 344 (1976) ("[P]rocedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions."). In matters such as this, the concern for accuracy is that individuals will erroneously be deprived of their liberty—the paramount interest at stake—as opposed to a concern with the accuracy

6

of an IJ's determination that an individual is not a danger or a flight risk.[6]

And the Court does conclude that Respondents' use of the automatic stay creates a large risk that Mr. Balderas Rivas will erroneously be deprived of his liberty interests. To be sure, "the only individuals subject to the automatic stay are those who, by definition, prevailed at their bond hearing." *Martinez*, 2025 WL 2598379, at \*3. It creates "a patently unfair situation by taking the stay decision out of the hands of the judges altogether and giving it to the prosecutor who has by definition failed to persuade a judge in an adversary hearing that detention is justified." *Ashley v. Ridge*, 288 F. Supp. 2d 662, 671 (D.N.J. 2003) (cleaned up).

Further, the automatic stay does not require DHS to consider or demonstrate any individualized facts or show a likelihood of success on the merits. "A stay of an order directing the release of a detained individual is an 'especially' extraordinary step, because 'in our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" *Gunaydin v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154, at \*9 (D. Minn. May 21, 2025) (cleaned up) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

Finally, with respect to the third factor, Respondents contend they have a

---

[6] To be sure, Respondents apparently have not appealed the IJ's conclusions in that regard and instead have appealed the IJ's determination that 8 U.S.C. § 1226 applies to Petitioner in the first place. But this Court has already rejected Respondents' interpretation of 8 U.S.C. §§ 1225 and 1226 in *Hernandez v. Baltazar*, No. 1:25-cv-3688-SKC-SBP, 2025 WL 3718159, at \*1 (D. Colo. Dec. 23, 2025). To the extent necessary, the Court incorporates its *Hernandez* analysis here.

strong governmental interest in preventing flight risks due to the difficulties of removing noncitizens who are not detained. Dkt. 13, p.7. But this interest rings hollow given that, as noted above, this automatic stay is being applied only to those individuals "who an Immigration Judge has determined [*do*] *not pose a public safety threat or a risk of flight* sufficient to warrant continued confinement." *Merchan-Pacheo*, 2026 WL 88526, at *16 (emphasis added). Respondents' stated interest is inconsequential when weighed against Mr. Balderas Rivas' liberty interest. *Maza v. Hyde*, --- F. Supp.3d ---, 2025 WL 2951922, at *4 (D. Mass. Oct. 20, 2025).

*   *   *

For the reasons shared above, the Court finds that the automatic stay regulation, 8 C.F.R § 1003.19(i)(2), violates Mr. Balderas Rivas' procedural due process rights under the Fifth Amendment. Accordingly, the Petition for Writ of Habeas Corpus is GRANTED.[7]

IT IS ORDERED once Mr. Balderas Rivas posts his $5,000 bond, Respondents shall immediately release Petitioner from custody. IT IS FURTHER ORDERED Respondents may not impose an ankle monitor or any other condition not specifically imposed in writing by the immigration judge. *See Batz Barreno v. Baltasar*, No. 25-cv-03017-GPG-TPO, 2026 WL 120253, at *2 (D. Colo. Jan. 15, 2026) (concluding use

---

[7] To the extent Petitioner's Counsel seeks an award of attorney's fees, they must file a separate motion for fees that complies with the Federal Rules of Civil Procedure and the Local Rules of Practice for this District.

of a GPS ankle monitor constitutes custody for the purposes of habeas corpus and due process).

IT IS FURTHER ORDERED Respondents shall file a status report within TEN DAYS of the date of this Court's order to certify compliance.

DATED:   February 17, 2026.

BY THE COURT

_____
S. Kato Crews
United States District Judge

9